## Case No. 24-6814

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————

### JOSE ANTONIO GARCIA,

*Plaintiff and Appellant,*

*v.*

### COUNTY OF ALAMEDA, and YESENIA
### SANCHEZ, Sheriff of Alameda County, in her
### official capacity,

*Defendants and Appellees.*

———————

Appeal from United States District Court
Northern District of California
Hon. Richard Seeborg
U.S. District Court Case No. 3:24-cv-03997-RS

———————

### APPELLANT'S OPENING BRIEF

———————

### FIRST AMENDMENT COALITION
David Loy
dloy@firstamendmentcoalition.org
Ann Cappetta
acappetta@firstamendmentcoalition.org
534 4th Street, Suite B
San Rafael, CA 94901-3334
415.460.5060

Attorneys for Plaintiff and Appellant JOSE ANTONIO GARCIA

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................1

STATEMENT OF JURISDICTION...........................................................2

ISSUES PRESENTED................................................................................3

PERTINENT ORDINANCE ......................................................................3

STATEMENT OF THE CASE....................................................................4

I.      PLAINTIFF'S REPORTING ON SIDESHOWS ...........................4

II.     ADOPTION OF ORDINANCE ......................................................7

III.    EFFECT OF ORDINANCE ON REPORTING............................12

STANDARD OF REVIEW .......................................................................14

SUMMARY OF ARGUMENT .................................................................15

ARGUMENT .............................................................................................17

I.      THE ORDINANCE IS SUBJECT TO FIRST AMENDMENT
        REVIEW BECAUSE IT RESTRICTS ACCESS TO A
        TRADITIONAL PUBLIC FORUM AND PROHIBITS THE
        RECORDING OF CERTAIN EVENTS IN THAT FORUM.......................19

        A.     Because Traditional Public Forums Have Been Historically
               Open to Speech, a Law Restricting Access to Such a Forum Is
               Subject to First Amendment Scrutiny. ................................19

        B.     A Law that Restricts the Pure Speech of Recording Events in a
               Traditional Public Forum Is Subject to First Amendment
               Review.................................................................25

        C.     The Ordinance Cannot Be Exempted from First Amendment
               Scrutiny on the Ground that Persons Merely Recording
               Unlawful Conduct in a Traditional Public Forum Are Somehow
               Participants in such Conduct.............................................30

II.     THE ORDINANCE IS A CONTENT-BASED RESTRICTION ON
        THE RIGHT TO RECORD EVENTS OF PUBLIC CONCERN IN A
        TRADITIONAL PUBLIC FORUM...........................................35

III.    THE ORDINANCE CANNOT SURVIVE STRICT SCRUTINY
        BECAUSE IT IS NOT THE LEAST RESTRICTIVE MEANS TO
        SERVE ANY PROPER INTERESTS.........................................41

i

A.    The District Court Erred in Upholding the Ordinance Based on
      an Impermissible Interest in Deterring Protected Speech. .................. 42

B.    The County Has a Less Restrictive Alternative Because It Can
      Enforce Laws Against Unlawful Conduct Instead of Punishing
      Protected Speech. ................................................................................ 43

C.    The Ordinance Is Not Justified by Any Permissible Safety
      Interest Because It Fails to Protect Other Bystanders from Risks
      of Harm Similar to Those Faced by "Spectators." ............................ 48

CONCLUSION ..................................................................................................... 50

FORM 8 ................................................................................................................ 51

ADDENDUM

# TABLE OF AUTHORITIES

Page(s)

CASES

*ACLU v. Alvarez*
 679 F.3d 583 (7th Cir. 2012) ................................................................28

*Am. Beverage Ass'n v. City & County of San Francisco*
 916 F.3d 749 (9th Cir. 2019) ................................................................18

*Anderson v. City of Hermosa Beach*
 621 F.3d 1051 (9th Cir. 2010) .........................................................29, 47

*Animal Legal Def. Fund v. Wasden*
 878 F.3d 1184 (9th Cir. 2018) .......................................................*passim*

*Aptive Env't, LLC v. Town of Castle Rock*
 959 F.3d 961 (10th Cir. 2020) ..............................................................46

*Askins v. U.S. Dep't of Homeland Sec.*
 899 F.3d 1035 (9th Cir. 2018) ...................................................21, 26, 41

*Berger v. City of Seattle*
 569 F.3d 1029 (9th Cir. 2009) .........................................................20, 39

*Boos v. Barry*
 485 U.S. 312 (1988) ..............................................................................39

*Branzburg v. Hayes*
 408 U.S. 665 (1972) ..............................................................................27

*Brown v. Ent. Merchs. Ass'n*
 564 U.S. 786 (2011) ..............................................................................43

*Brown v. Kemp*
 86 F.4th 745 (7th Cir. 2023) ...........................................................27, 30

*Cal. Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*
 29 F.4th 468 (9th Cir. 2022) ................................................................14

*Cal. First Amend. Coal. v. Calderon*
 150 F.3d 976 (9th Cir. 1998) ................................................................27

*Carey v. Brown*
    447 U.S. 455 (1980)...................................................................37

*Chestnut v. Wallace*
    947 F.3d 1085 (8th Cir. 2020) ..........................................26, 36

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*
    596 U.S. 61 (2022)....................................................................37

*Cohen v. California*
    403 U.S. 15 (1971)....................................................................41

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
    657 F.3d 936 (9th Cir. 2011) ...................................................45

*Entler v. Gregoire*
    872 F.3d 1031 (9th Cir. 2017) .................................................35

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*
    82 F.4th 664 (9th Cir. 2023) ....................................................18

*Fields v. City of Philadelphia*
    862 F.3d 353 (3d Cir. 2017) ..............................................26, 29

*Flanagan v. Flanagan*
    27 Cal. 4th 766 (2002) .............................................................32

*Fordyce v. City of Seattle*
    55 F.3d 436 (9th Cir. 1995) ..............................................21, 26

*Hernández-Gotay v. United States*
    985 F.3d 71 (1st Cir. 2021)......................................................24

*Holder v. Humanitarian L. Project*
    561 U.S. 1 (2010).............................................................40, 41

*HomeAway.com v. City of Santa Monica*
    918 F.3d 676 (9th Cir. 2019) ...................................................23

*IMDb.com Inc. v. Becerra*
    962 F.3d 1111 (9th Cir. 2020) ...............................42, 44, 46, 48

iv

*Index Newspapers LLC v. U.S. Marshals Serv.*
  977 F.3d 817 (9th Cir. 2020) ..........................................................31, 32, 46, 49

*Int'l Franchise Ass'n v. City of Seattle*
  803 F.3d 389 (9th Cir. 2015) ...................................................................23

*Jordan v. Adams Cnty. Sheriff's Off.*
  73 F.4th 1162 (10th Cir. 2023) ...............................................................30

*In re K.M.*
  75 Cal. App. 5th 323 (2022) ....................................................................31

*Legal Aid Servs. of Or. v. Legal Servs. Corp.*
  608 F.3d 1084, 1096 (9th Cir. 2010) .....................................................18

*Leigh v. Salazar*
  677 F.3d 892 (9th Cir. 2012) ..................................................................27

*Lind v. Grimmer*
  30 F.3d 1115 (9th Cir. 1994) ..................................................................43

*Matsumoto v. Labrador*
  No. 23-3787, 2024 U.S. App. LEXIS 30342
  (9th Cir. Dec. 2, 2024) ......................................................................18, 31

*McCullen v. Coakley*
  573 U.S. 464 (2014)......................................................................*passim*

*Meinecke v. City of Seattle*
  99 F.4th 514 (9th Cir. 2024) ...........................................17, 18, 42, 45

*Mills v. Alabama*
  384 U.S. 214 (1966).................................................................................33

*NAACP v. Button*
  371 U.S. 415 (1963).................................................................................31

*Ness v. City of Bloomington*
  11 F.4th 914 (8th Cir. 2021) ..................................................................41

*Nunez ex rel. Nunez v. City of San Diego*
  114 F.3d 935 (9th Cir. 1997) ......................................................22, 23, 25

v

*Packingham v. North Carolina*
  582 U.S. 98 (2017)..........................................................21

*People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau
  Fed'n, Inc.*
  60 F.4th 815 (4th Cir. 2023) ...............................................28

*People v. Lara*
  9 Cal. App. 5th 296 (2017) ...............................................31

*People v. Ng*
  13 Cal. 5th 448 (2022) ....................................................32

*Police Dep't of Chi. v. Mosley*
  408 U.S. 92 (1972)....................................................38, 39

*Reed v. Town of Gilbert*
  576 U.S. 155 (2015)...............................................*passim*

*Republican Party v. White*
  536 U.S. 765 (2002)........................................................48

*Rice v. Paladin Enters.*
  128 F.3d 233 (4th Cir. 1997) ............................................34

*Rodgers v. Bryant*
  942 F.3d 451 (8th Cir. 2019) ...........................................48

*Sanchez v. City of Atherton*
  No. 22-cv-03106, 2023 U.S. Dist. LEXIS 3763
  (N.D. Cal. Jan. 9, 2023) ...........................................26, 36

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*
  502 U.S. 105 (1991).............................................32, 37, 42

*Snyder v. Phelps*
  562 U.S. 443 (2011)........................................................20

*United States v. Playboy Ent. Grp.*
  529 U.S. 803 (2000)........................................................42

*United States v. Stevens*
  559 U.S. 460 (2010).....................................................32, 37

vi

*Univ. of Tex. v. Camenisch*
   451 U.S. 390 (1982) ......................................................................19

*W. Watersheds Project v. Michael*
   869 F.3d 1189 (10th Cir. 2017) ....................................................28

*Winters v. New York*
   333 U.S. 507 (1948) ......................................................................33

**STATUTES AND RULES**

7 U.S.C. § 2156(a)(2)(A) ....................................................................24

28 U.S.C. § 1292(a)(1) ..........................................................................3

28 U.S.C. §§ 1331, 1367 ........................................................................3

42 U.S.C. § 1983 ....................................................................................2

Alameda County Code Chapter 10.40 ..................................................7
   § 10.40.010(A) ..............................................................................10
   § 10.40.010 (C) .............................................................................10
   § 10.40.010(D) ..............................................................................10
   § 10.40.010(F) ...............................................................................10
   § 10.40.020 .............................................................................*passim*
   § 10.40.030 ..............................................................................19, 20
   § 10.40.030(A)–(B) .........................................................................7
   § 10.40.050 ......................................................................................9

California Health & Safety Code § 41800 ...........................................12

California Penal Code

§ 182................................................................................................12
§ 187-89...........................................................................................11
§ 191.5.............................................................................................11
§ 192................................................................................................11
§ 192(c)............................................................................................11
§ 192.5.............................................................................................11
§ 242................................................................................................11
§ 243................................................................................................11
§ 245................................................................................................11
§ 246.3.............................................................................................11
§ 374................................................................................................11
§ 415(2)............................................................................................11
§ 451................................................................................................11
§ 594................................................................................................11

California Vehicle Code

§ 20001............................................................................................11
§ 20002............................................................................................11
§ 22500............................................................................................11
§ 23103(a).........................................................................................11
§ 23104............................................................................................11
§ 23105............................................................................................12
§ 23109.......................................................................................10, 12
§ 23109.1..........................................................................................10
§ 23109.2..........................................................................................10
§ 23152............................................................................................12

Fed. R. App. P. 4(a)(1)(A)...........................................................................3

Oakland, Cal., Code §§ 10.74.010-10.74.090 (2023)........................................12, 44

S.F., Cal., Police Code art. 56, §§ 5600-11 (2024)..............................................12
§ 5606.........................................................................................12, 44

**OTHER AUTHORITIES**

Alyssa Goard, *San Jose Sideshow near Santana Row Injures Spectator,*
*Police Officer*, NBC Bay Area (June 16, 2024),
https://www.nbcbayarea.com/news/local/south-bay/santana-row-
sideshow/3568247/ (last updated June 17, 2024, 4:47 AM) ...............................34

Caleb Lunetta, *Street Takeover Events Involving 200 People Thwarted Throughout San Diego Last Weekend*, San Diego Union-Tribune (June 5, 2024, 8:08 PM) (last updated June 6, 2024, 12:23 AM) ....................................45

David Hernandez, *11 Arrested, 51 Cited During Street Takeovers in San Diego, Spring Valley*, San Diego Union-Tribune (Sept. 6, 2022, 8:45 PM), https://www.sandiegouniontribune.com/news/public-safety/story/2022-09-06/11-arrested-52-cited-during-street-takeovers-in-san-diego-spring-valley (last updated Sept. 7, 12:45 AM)................................46

Karen Kucher, *Officers Seize 13 Vehicles, Arrest 2 in Connection with Street Takeover 'Sideshows' in San Diego*, San Diego Union-Tribune (May 2, 2024, 8:30 PM), https://www.sandiegouniontribune.com/news/public-safety/story/2024-05-02/officers-seize-vehicles-street-takeover-sideshows (last updated May 3, 12:30 AM) .................................................45, 46

Kevin Ko, *San Francisco Police Chief Promises Accountability, but so far No Arrests in Sunday Sideshows*, CBS News Bay Area (June 11, 2024, 5:59 PM) https://www.cbsnews.com/sanfrancisco/news/san-francisco-police-chief-promises-accountability-but-no-arrests-so-far-in-weekend-sideshows/ ............................................................................................................34

## INTRODUCTION

The First Amendment guarantees the right to record events that occur in public—protests, performances, and police activity, to name a few. This right to record is used every day by journalists and others, and it is essential to keeping communities informed. Indeed, the public depends on such recordings for firsthand reporting of newsworthy events, especially when those events are controversial.

This case is about a law that criminalizes journalism by making it illegal to record events in a traditional public forum—specifically, sideshows. The existence and effects of sideshows, which occur when one or more drivers take over an intersection to skid in circles and perform stunts, are matters of public concern on which the press often reports.

The ordinance at issue, adopted by Alameda County, punishes mere presence in a traditional public forum within 200 feet of a sideshow or related preparations for the purpose of observing the sideshow. By prohibiting presence with intent to observe a sideshow, the County is prohibiting the press and public from recording the sideshow, because observation is inextricably intertwined with recording. In doing so, the County is restricting the First Amendment right to record events in a traditional public forum.

The ordinance restricts protected speech based on content. It prohibits the recording of sideshows but not the recording of other events or topics at the same

1

time and place. The ordinance fails strict scrutiny because it is not the least restrictive means of serving a compelling interest. The ordinance cannot be justified by any interest in suppressing the recording of sideshows because the First Amendment does not allow a desire to suppress protected speech to justify a restriction on that speech. The County can address the unlawful conduct associated with sideshows by enforcing numerous existing laws without restricting speech. As nearby jurisdictions have done, the County may also adopt an ordinance prohibiting the organizing or aiding and abetting of sideshows without punishing the press or public for recording them. The ordinance cannot be sustained on the ground of protecting safety, because it only applies to people intending to observe the sideshow, not people present at the same time and place for other purposes, although the risk of harm is similar for both.

The district court therefore erred in denying a preliminary injunction protecting a reporter's right to make firsthand recordings of sideshows in a traditional public forum. This Court is respectfully requested to reverse and remand with directions to enter a preliminary injunction protecting the First Amendment right to record newsworthy events in a traditional public forum.

## STATEMENT OF JURISDICTION

The complaint pleads First Amendment claims under 42 U.S.C. § 1983 and a supplemental claim under the California Constitution. ER-202–03. The district

2

court has jurisdiction under 28 U.S.C. §§ 1331, 1367. The district court denied a motion for a preliminary injunction. ER-3–14. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1). The order denying a preliminary injunction was entered on October 11, 2024, and the notice of appeal was timely filed on November 7, 2024. ER-241; Fed. R. App. P. 4(a)(1)(A).

## ISSUES PRESENTED

1.    Does the First Amendment apply to an ordinance that restricts access to a traditional public forum and prohibits the recording of events of public concern in that forum?

2.    Is an ordinance a content-based restriction on speech in a traditional public forum when it prohibits recording certain events but not others at the same time and place?

3.    Does an ordinance that restricts speech based on content survive strict scrutiny if it is not the least restrictive means to serve the government's interests in preventing unlawful conduct or protecting safety?

## PERTINENT ORDINANCE

A copy of the ordinance at issue is attached as an addendum.

3

## STATEMENT OF THE CASE

## I.      PLAINTIFF'S REPORTING ON SIDESHOWS

Jose Antonio Garcia, who writes under the maternal family surname of Fermoso and is referred to as such in this brief, is an award-winning reporter who covers road safety, transportation, and public health for *The Oaklandside*, a nonprofit journalism platform founded in June 2020 and committed to amplifying community voices and rooting its reporting in the needs and wants of diverse communities. ER-154–55. *The Oaklandside* is "one local news site component of the parent nonprofit Cityside Journalism Initiative, which is devoted to building community and strengthening democracy through local news." ER-154.

Fermoso reports on road safety matters in Oakland and parts of unincorporated Alameda County, among other areas. ER-155. As Fermoso has reported, a "sideshow" is a "controversial event where drivers take over city intersections with their cars as they skid in circles while performing stunts." ER-155. Sideshows "can last seconds or hours." ER-155. Some defend them as "an important outlet for youthful rebellion," and others have noted they can be "accompanied by gun violence and rowdy behavior." ER-155.

Fermoso has regularly reported on sideshows that have occurred in Oakland and unincorporated Alameda County. ER-155–57. In the past two years, Fermoso has written at least 16 articles that discuss incidents at a sideshow, sideshows

4

generally, or sideshow-prevention measures. ER-155. Fermoso sees his role as informing communities on the facts of sideshows, so that they are empowered with the knowledge necessary to understand the history of and problems associated with these events and may make fact-based decisions regarding sideshow attendance, policing, and policy reform. ER-155–56.

For instance, on May 30, 2023, Fermoso published an article in *The Oaklandside* entitled "Map: These Oakland intersections are hotspots for sideshows." ER-156, ER-165. In reporting this article, Fermoso and his co-author mapped every report of a sideshow made to Oakland police from January 2019 to November 2022. ER-156. As reported in the article, Fermoso found that the intersection most frequently taken over by sideshows, according to the reports to police, was Keller Avenue and Skyline Boulevard, with 55 days of sideshow activity reported to police between January 2019 and November 2022. ER-156.

The intersection of Keller Avenue and Skyline Boulevard is on the border between the City of Oakland and unincorporated Alameda County. ER-156. Sideshows occurring at this intersection are visible, within 200 feet, from areas of unincorporated Alameda County. ER-159. Other sideshows Fermoso mapped for the article occurred directly in unincorporated Alameda County, including one day of sideshow activities reported at the intersection of Grass Valley Road and Skyline Boulevard, as well as at 7861 Redwood Road. ER-157.

The public response to Fermoso's article was substantial; as of or about June 18, 2024, this article was viewed approximately 13,000 times. ER-157. After the article's publication, Fermoso planned to follow up with on-site reporting on sideshows, due to the high level of interest in the article and in understanding sideshows. ER-157. He planned to personally observe, record, and report on sideshows in Oakland and unincorporated Alameda County, including sideshows at the most frequently reported intersection of Keller Avenue and Skyline Boulevard. ER-157.

Fermoso planned to record and photograph the intersection and sideshow event from all angles, including from unincorporated Alameda County, within 200 feet of the intersection, to best capture images for purposes of newsgathering and reporting. ER-157. As he stated, "To document and report on these sideshows and provide our readers and potential viewers with the most accurate account of the event, I would make audio and video recordings and take still photographs." ER-157. According to Fermoso, "It is important for covering sideshows to photograph, film, and record audio of the events, within 200 feet of the intersections where they occur, to convey adequately detailed visual and auditory context that can enhance readers' comprehension of the matters reported." ER-157.

Fermoso regularly relies "on photographs, as well as video and audio recordings, in order to gather news and information and keep the public informed."

6

ER-156. As Fermoso declared, "Quality audio and visual recordings and photographs are uniquely valuable to my journalistic work because they help transport viewers to what is happening on the scene, especially in the context of breaking news." ER-156. In particular, recording and reporting on sideshows "enables the dissemination of critical information to Oakland and Alameda County communities, which facilitates more widespread awareness of sideshows and associated problems, policing, and policy reform." ER-156.

## II.    ADOPTION OF ORDINANCE

On August 1, 2023, the County's Board of Supervisors adopted Ordinance No. 2023-31 ("Ordinance"), codified as Alameda County Code ("ACC") Chapter 10.40. The Ordinance makes it a crime for "any person to knowingly be a spectator at a sideshow event conducted on a public street or highway or off-street parking facility" or for "any person to knowingly be a spectator at the location of preparations for a sideshow event on a public street or highway or off-street parking facility." ACC § 10.40.030(A)–(B).

"Sideshow" means "an occasion where one or more persons, for the purpose of performing a street race or reckless driving exhibition for one or more spectator(s) either blocks or impedes traffic on a street or highway or impedes

access to an off-street parking facility." ACC § 10.40.020. "Sideshow event" means "a sideshow, street race, or reckless driving exhibition."[1] ACC § 10.40.020.

"Spectator" means "any person who is present at a sideshow event, or the site of the preparations for a sideshow event, for the purpose of viewing, observing, watching, or witnessing the sideshow event as it progresses." ACC § 10.40.020. "Spectator" may include but is not limited to "any person at the location of the sideshow event that may have participated in preparations and/or promoting the sideshow event." *Id.* A person is "present" at "a sideshow event if that person is within two hundred (200) feet of the location of the sideshow event, or within two hundred (200) feet of the site of the preparations for any sideshow event." ACC § 10.40.020.

"Preparations" for a sideshow event "include, but are not limited to, any of the following acts done for the purpose of facilitating, aiding, abetting, encouraging, assisting, or instigating a sideshow event:

1. One or more motor vehicles and persons have arrived at a predetermined location;

2. One or more persons have gathered on, or adjacent to, a public street or highway or at an off-street parking facility;

---

[1] The Ordinance defines "street race" and "reckless driving exhibition" by reference to state law. ACC § 10.40.020 (citing Cal. Veh. Code §§ 23103, 23109).

8

3. One or more persons have impeded the free public use of a street or highway, or off-street parking facility by acts, words, or physical barriers;

4. One or more motor vehicles have lined up on a public street, highway, or off-street parking facility with motors running;

5. One or more drivers is revving a motor vehicle's engine or causing the motor vehicle's tires to spin; or

6. A person is standing or sitting in a location in the vicinity of a sideshow event to act as a race starter."

ACC § 10.40.020. A violation of the Ordinance is "a misdemeanor punishable by imprisonment not exceeding three months or by fine not exceeding one thousand dollars ($1,000.00) or by both." ACC § 10.40.050.

By prohibiting being present within 200 feet of a "sideshow event" for the purpose of viewing, observing, watching, or witnessing the event, the Ordinance restricts firsthand recordings of the sideshow, because viewing, observing, watching, or witnessing an event is inextricably intertwined with recording it. The Ordinance thus criminalizes journalism about sideshows by prohibiting reporters from making firsthand recordings of them within the 200-foot zone.[2]

Board of Supervisors President Nathan Miley and Sheriff Yesenia Sanchez sent a letter to the Board on June 6, 2023, that recommended adopting the

---

[2] As used in this brief, the term "recording" includes making audio or video recordings, taking photographs, writing notes, or any other means of preserving observations and recollections.

9

Ordinance. ER-181–85. The letter acknowledged that persons observing sideshows "take video recordings of these events." ER-184. The letter admits that "California law already prohibits drivers and passengers from engaging in Sideshow Events by criminalizing illegal street racing and illegal exhibitions of reckless driving" and "allows a peace officer to arrest a person and seize their motor vehicle if the peace officer determines that the person was engaged in these activities." ER-184; *see also* Cal. Veh. Code §§ 23109, 23109.1, 23109.2 (criminalizing speed contests with or without resulting injuries and authorizing impoundment of vehicles involved in contests).

According to the Ordinance's findings, sideshows "cause significant damage" to infrastructure and "create an unsafe environment" due to reckless driving and persons "under the influence of drugs and alcohol." ACC § 10.40.010(A), (C). The findings state that sideshows have been "associated with the discharge of firearms" and cause "damage to vehicles and private and public property, reduced air quality due to the smoke released by burning rubber tires, noise pollution, and unmanageable crowds that leave behind garbage." ACC § 10.40.010(C), (D). The findings also recite that "vehicles at sideshows have caused great bodily injury and death to spectators." ACC § 10.40.010(F).

In the district court, the County stated that "[s]ideshows present a serious threat to public safety" and noted someone "was shot and killed at a sideshow."

10

ER-102–03; *see also* ER-117 (listing "Hit and Run," "Stabbings," and "Arson").

The County acknowledged that "[s]pectators and others" at sideshows are "at risk of injury or death," and that persons other than "spectators" who are "present at sideshows," such as "passersby and local residents or workers, may be at risk of injury from sideshows," but it contended "they do not present the same risks of increased unlawful behavior associated with spectators."[3] ER-102, ER-104.

Existing laws prohibit the conduct described in the Ordinance and County's evidence, such as murder or manslaughter, Cal. Pen. Code §§ 187–89, 192; vehicular manslaughter with or without intoxication, *id.* §§ 191.5, 192(c), 192.5; assault with a deadly weapon and battery, *id.* §§ 242–43, 245; discharge of firearms, *id.* § 246.3; littering, *id.* § 374; noise pollution, *id.* § 415(2); arson, *id.* § 451; vandalism, *id.* § 594; harming or destroying infrastructure or other property, *id.*; hit and run, Cal. Veh. Code §§ 20001–02; blocking intersections, *id.* § 22500; reckless driving "in willful or wanton disregard for the safety of persons or property," *id.* § 23103(a); reckless driving that "proximately causes bodily injury" or "great bodily injury" to "a person other than the driver," *id.* § 23104; "reckless driving" that injures "a person other than the driver,"

---

[3] For example, the County's evidence shows a person at a sideshow holding a sign that says, "DRIVE LIKE YOUR KIDS LIVE HERE." ER-112. If not a "spectator" under the Ordinance, that person is at similar risk of harm as a "spectator."

11

*id.* § 23105; driving under the influence of drugs or alcohol, *id.* § 23152; and burning tires, *id.* § 23109; Cal. Health & Safety Code § 41800. Conspiracy to commit any of the foregoing offenses is also a crime. Cal. Pen. Code § 182.

Nearby jurisdictions such as Oakland and San Francisco have adopted ordinances that prohibit organizing, participating in, or aiding and abetting sideshows without making it unlawful for journalists or others to record and report on them. Oakland, Cal., Code §§ 10.74.010–10.74.090 (2023); S.F., Cal., Police Code art. 56, §§ 5600–11 (2024). Indeed, San Francisco expressly exempts "members of the media engaged in the course and scope of their duties" and "members of the public who are merely observing and/or reporting" on a sideshow.[4] S.F., Cal., Police Code § 5606.

## III.   EFFECT OF ORDINANCE ON REPORTING

After learning of the Ordinance, Fermoso "canceled all future plans to report on-site at sideshows in the unincorporated areas of Alameda County" because he reasonably "feared citation, arrest, and criminal prosecution under the Ordinance" for doing so. ER-158. Due to his "fears of criminal prosecution for observing sideshows," he has been "unable to engage in effective firsthand observation and

---

[4] The San Francisco ordinance was under consideration when the district court ruled. ER-38–65. It was adopted in substantially similar form on October 15, 2024, shortly after the district court's order.

12

recording of sideshows in the unincorporated areas of Alameda County since the Ordinance was passed." ER-158.

Although a County official claimed not to know of any sideshows occurring in the County after adoption of the Ordinance, ER-104, sideshows have regularly continued at the Keller-Skyline intersection on the border of Oakland and Alameda County. ER-67. The actual number of sideshows at the Keller-Skyline intersection has often exceeded the number of such sideshows reported to the police. ER-156.

This action was filed on July 2, 2024, challenging the Ordinance on its face or as applied to Fermoso. ER-202–04. Fermoso moved for "a preliminary injunction prohibiting the County from enforcing the Ordinance against him for observing, recording, or reporting on sideshows or related preparations in his capacity as a reporter." ER-136. The issue presented by his motion was whether "he is likely to prevail on his claim that as applied to him the Ordinance is a content-based restriction on speech that violates the First Amendment by criminalizing journalism on matters of public concern." ER-137.

Fermoso argued that the Ordinance is subject to First Amendment review because it restricts access to a traditional public forum and prohibits the protected speech of recording events in that forum. ER-142–46. Fermoso also argued the Ordinance is a content-based restriction on his right to record events in a traditional public forum because it restricts only the recording of sideshows and not other

13

topics at the same time and place. ER-146–51. On reply and in the alternative, Fermoso argued the Ordinance was unconstitutional under intermediate scrutiny even if it were content neutral. ER-31–33.

The district court held Fermoso has standing but denied a preliminary injunction, holding that the "First Amendment … does not apply," and even if it did, the Ordinance is "content-neutral" and survives intermediate scrutiny. ER-5–6, ER-10, ER-12. This timely appeal followed.[5] ER-241.

## STANDARD OF REVIEW

This Court reviews a "decision to grant or deny a preliminary injunction for abuse of discretion," but the "district court's interpretation of the underlying legal principles, however, is subject to de novo review and a district court abuses its discretion when it makes an error of law." *Cal. Chamber of Commerce v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022). "A district court's decision is based on an erroneous legal standard if: (1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in the litigation." *Id.* (cleaned up).

---

[5] By stipulation of the parties, the district court stayed the case pending this appeal. ER-248.

## SUMMARY OF ARGUMENT

The district court erred in exempting the Ordinance from First Amendment review for either or both of two reasons. First, the Ordinance restricts access to a traditional public forum, and the Supreme Court held that such a law triggers First Amendment scrutiny when challenged by a person wishing to engage in protected speech in the restricted area, as Fermoso does by seeking to record sideshows. Second, by restricting presence in a traditional public forum with intent to observe events in that forum, the Ordinance restricts the protected speech of recording those events, because observation is a precursor to and inextricably intertwined with recording.

The district court incorrectly relied on irrelevant cases about economic regulations that have nothing to do with access to a traditional public forum or recording events in that forum. In exempting the Ordinance from First Amendment review, the district court created a roadmap for censorship by immunizing restrictions on recording events in a public forum. If the government can escape the First Amendment by omitting the term "recording" from a law prohibiting presence in a public forum with intent to observe certain events, the right to record is a dead letter. Those who are exercising First Amendment rights to record events in a public forum cannot be equated with participants in those events. The press

15

and public do not lose their First Amendment right to record events in a public forum merely because those events are unlawful.

The Ordinance is a content-based restriction on speech because it limits the right to record sideshows but not other events or topics at the same time and place. If Fermoso makes a recording within 200 feet of a sideshow, the Ordinance applies to him depending on what he is recording. If he is recording the sideshow, he violates the Ordinance, because he has the purpose of observing the sideshow. If he is recording another event, he does not violate the Ordinance, because he does not have the purpose of observing the sideshow. That is the essence of a content-based restriction on speech.

The Ordinance fails strict scrutiny because it is not the least restrictive means to serve any proper interests. The government may not posit the effect of suppressing protected speech about sideshows as an interest justifying the restriction of that speech. Numerous existing laws prohibit the unlawful conduct identified by the County, and the government may not punish protected speech based on content when it can enforce laws against unprotected criminal conduct. As Oakland and San Francisco have done, the County may also adopt an ordinance that prohibits organizing or aiding and abetting a sideshow without infringing the First Amendment right to record the sideshow. The Ordinance cannot be justified by any interest in protecting safety, because persons other than "spectators" who

16

are near sideshows are at similar risk of harm, yet the Ordinance does not apply to
them. Accordingly, the Ordinance violates the First Amendment as a content-based
restriction on speech.

## ARGUMENT

To obtain a preliminary injunction, Fermoso must show "(1) he is likely to
succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent
the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a
preliminary injunction is in the public interest." *Meinecke v. City of Seattle*, 99
F.4th 514, 521 (9th Cir. 2024) (quoting *Baird v. Bonta*, 81 F.4th 1036, 1040
(9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20
(2008)). When the government opposes an injunction, the third and fourth factors
merge. *Meinecke*, 99 F.4th at 521.

The Court must follow "a unique likelihood-of-success standard in First
Amendment cases," under which "the moving party bears the initial burden of
making a colorable claim that its First Amendment rights have been infringed, or
are threatened with infringement, at which point the burden shifts to the
government to justify the restriction on speech." *Id*.

The district court erred in holding Fermoso was unlikely to prevail on the
merits of his argument that the Ordinance is a content-based restriction on his
speech. The "likelihood of success on the merits is the most important factor" in

17

deciding whether to grant a preliminary injunction, and "even more so when a
constitutional injury is alleged." *Matsumoto v. Labrador*, No. 23-3787, 2024 U.S.
App. LEXIS 30342, at *28 (9th Cir. Dec. 2, 2024). That is especially true in this
case since any loss of First Amendment rights constitutes irreparable harm and the
balance of equities and public interest always favor protecting freedom of speech.
*Meinecke*, 99 F.4th at 526; *Fellowship of Christian Athletes v. San Jose Unified
Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694–95 (9th Cir. 2023); *Am. Beverage Ass'n
v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019).

     Although Fermoso pleaded challenges to the Ordinance both on its face and
as applied, ER-202–03, and reserves the right to pursue a facial challenge on
remand, his motion for a preliminary injunction only sought relief as applied
to him. Therefore, this appeal presents the question whether the Ordinance violates
the First Amendment as applied to his intended speech of recording sideshows in a
traditional public forum. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d
1084, 1096 (9th Cir. 2010) ("An as-applied First Amendment challenge contends
that a given statute or regulation is unconstitutional as it has been applied to a
litigant's particular speech activity."). As applied to the speech in which Fermoso
wishes to engage—firsthand recording of sideshows—the Ordinance infringes the

First Amendment, and the County did not carry its heavy burden under strict scrutiny to justify a content-based restriction of his speech.[6]

## I. THE ORDINANCE IS SUBJECT TO FIRST AMENDMENT REVIEW BECAUSE IT RESTRICTS ACCESS TO A TRADITIONAL PUBLIC FORUM AND PROHIBITS THE RECORDING OF CERTAIN EVENTS IN THAT FORUM.

For either or both of two reasons, the district court erred as a matter of law in holding that the Ordinance was not subject to First Amendment scrutiny. First, the Ordinance restricts access to a traditional public forum. Second, the Ordinance restricts the protected speech of recording events in a traditional public forum.

### A. Because Traditional Public Forums Have Been Historically Open to Speech, a Law Restricting Access to Such a Forum Is Subject to First Amendment Scrutiny.

As defined in the Ordinance, sideshows occur "on a public street or highway." ACC § 10.40.030 (2024). By prohibiting persons from being present "within two hundred (200) feet of the location of the sideshow event, or within two hundred (200) feet of the site of the preparations for any sideshow event" for

---

[6] Fermoso reserves the right on remand to argue that the Ordinance fails intermediate scrutiny even if it is content neutral. ER-202; *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1982) (holding district court's ruling on preliminary injunction is "not binding at trial on the merits").

purposes of observing "the sideshow event as it progresses," ACC § 10.40.020, the

Ordinance imposes a restriction on access to public streets and adjacent sidewalks.[7]

Public streets and sidewalks are "the archetype of a traditional public forum"

and hold a "special position in terms of First Amendment protection." *Snyder v.

Phelps*, 562 U.S. 443, 456 (2011). This Court has confirmed the "bedrock

principle" that the "protections afforded by the First Amendment are nowhere

stronger" than in a traditional public forum. *Berger v. City of Seattle*, 569 F.3d

1029, 1035–36 (9th Cir. 2009).

Accordingly, as the Supreme Court has held, a law that restricts access to a

traditional public forum triggers First Amendment scrutiny when it is challenged

by a person seeking to engage in speech in the restricted area. *McCullen v.

Coakley*, 573 U.S. 464, 476 (2014). In *McCullen*, the Court considered a challenge

by sidewalk counselors to a law that provided, in relevant part, "No person shall

knowingly enter or remain on a public way or sidewalk adjacent to a reproductive

health care facility within a radius of 35 feet" of the facility at certain times. *Id.* at

471. Although the law said "nothing about speech on its face," the Court held

"there is no doubt" that it "restricts access to traditional public fora and is therefore

---

[7] The Ordinance also prohibits being a "spectator" of a sideshow conducted in an "off-street parking facility," ACC § 10.40.030, but that provision is not at issue in this appeal except to the extent it restricts access to public streets or sidewalks.

subject to First Amendment scrutiny," given that "traditional public fora are areas that have historically been open to the public for speech activities." *Id.* at 476; *cf. Packingham v. North Carolina*, 582 U.S. 98, 104 (2017) ("A fundamental principle of the First Amendment is that all persons have access to places" such as "a street or a park" that are "a quintessential forum for the exercise of First Amendment rights.").

Here, Fermoso wishes to record sideshows in the County from within 200 feet of the sideshow. ER-157. In doing so, he wishes to engage in protected speech in the area restricted by the Ordinance. "The act of recording is itself an inherently expressive activity," and because "the recording process is itself expressive and is 'inextricably intertwined' with the resulting recording, the creation of audiovisual recordings is speech entitled to First Amendment protection as purely expressive activity." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203–04 (9th Cir. 2018) (quoting *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010)). Therefore, "[t]he First Amendment protects the right to photograph and record matters of public interest" in a public forum. *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018); *see also Fordyce v. City of Seattle*, 55 F.3d 436, 438–39 (9th Cir. 1995) (recognizing "First Amendment right to film matters of public interest" such as "public protest march").

21

Like the law at issue in *McCullen*, the Ordinance imposes a buffer zone that prohibits persons from being present on portions of public sidewalks at specified times, and it is challenged by a person who wishes to engage in protected speech in the restricted area. Under *McCullen*, therefore, the Ordinance is subject to First Amendment scrutiny as a restriction on access to a traditional public forum that impinges on the right to speak in that forum.

This Court has similarly held that a restriction on access to a public forum is subject to First Amendment review even if it purports to be "a general regulation of conduct, not speech." *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 950 (9th Cir. 1997) (holding juvenile curfew was subject to First Amendment challenge as restriction on access to public forum). Because it restricts presence in a public forum with intent to observe a sideshow, the Ordinance "prohibits conduct that is a necessary precursor" to the "public expression" inherent in recording the sideshow, and therefore it has "an integral effect on the ability" of journalists and others "to express themselves" by engaging in the pure speech of recording. *Id.* at 950–51. As a result, the Ordinance must be reviewed under the First Amendment.

The district court erred by exempting the Ordinance from First Amendment review on the ground that it "does not address conduct with a significant expressive element." ER-8. In doing so, the district court disregarded the Supreme Court's command to apply the First Amendment to a restriction on access to a

22

traditional public forum even if the restriction says "nothing about speech on its face," *McCullen*, 573 U.S. at 476, as well as this Court's similar precedent in *Nunez*. Under *McCullen* and *Nunez*, a restriction on access to a public forum intrinsically impacts protected speech such as recording events in that forum.

The district court incorrectly relied on *HomeAway.com v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019) (cited at ER-7), because that case did not concern access to a traditional public forum. Instead, it concerned an ordinance that prohibited "short-term rentals, with the exception of licensed home-shares," and required "hosting platforms" for home rentals to refrain from "completing any booking transaction for properties not licensed and listed on the City's registry." *Id.* at 680. On those facts, this Court said that "[b]ecause the conduct at issue— completing booking transactions for unlawful rentals—consists only of nonspeech, nonexpressive conduct, we hold that the Ordinance does not implicate the First Amendment," given that "business dealings" contain no "significant expressive element." *Id.* at 685 (quoting *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015)). The ordinance at issue was thus "a housing and rental regulation" that "regulate[d] nonexpressive conduct—namely, booking transactions—not speech."[8] *Id.*

---

[8] Similarly, *Int'l Franchise Ass'n* concerned another economic regulation, a "minimum wage ordinance," not access to a public forum. 803 F.3d at 397.

That holding has nothing to do with this case, which concerns a traditional public forum. When a law does not restrict access to a traditional public forum, it may be proper to ask the "threshold question" whether the law implicates conduct with a "significant expressive element" before engaging in First Amendment review. *Id.* The same may be true for "regulations on serving alcohol, setting outdoor fires, selling firearms, and operating a tattoo parlor in a pandemic." ER-8.

But that is not the case here. When a law restricts access to traditional public fora, the court must subject the law to First Amendment scrutiny, because "[s]uch areas occupy 'a special position in terms of First Amendment protection'" and "have historically been open to the public for speech activities." *McCullen*, 573 U.S. at 476 (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)). The district court therefore erred in misapplying cases about economic regulations that do not concern access to a traditional public forum.

The district court also erred in relying on *Hernández-Gotay v. United States*, 985 F.3d 71 (1st Cir. 2021) (cited at ER-9). In that case, the court held only that a statutory provision banning "'sponsor[ship]' and 'exhibit[ion]' of cockfighting matches" did not violate the First Amendment. *Id.* at 75 (alteration in original) (quoting 7 U.S.C. § 2156(a)(1)). The court did not address the separate provision against attending such matches. 7 U.S.C. § 2156(a)(2)(A). Unlike the Ordinance, that law does not expressly restrict access to a traditional public forum.

24

Accordingly, such a law is not relevant here. A local government may adopt otherwise valid "local prohibitions" of unprotected criminal conduct, whether it occurs in "the shadows" or on "the streetcorners," ER-9, but any attempt to restrict a speaker's access to a traditional public forum or prevent the press or public from recording events in that forum presents a First Amendment issue.[9]

While otherwise valid laws against unprotected criminal conduct may not implicate the First Amendment, a law that restricts a speaker's access to a traditional public forum is subject to First Amendment review. *McCullen*, 573 U.S. at 476; *Nunez*, 114 F.3d at 950–51. There is nothing "incidental" about the Ordinance's impact on access to a traditional public forum. ER-8. By its terms, the Ordinance expressly limits access to a traditional public forum historically open to speech. For that reason, the district court erred in holding the First Amendment does not apply to this case.

### B.    A Law that Restricts the Pure Speech of Recording Events in a Traditional Public Forum Is Subject to First Amendment Review.

In addition or in the alternative, the Ordinance is subject to First Amendment review because it restricts the right to record events in a traditional public forum. As noted above, recording events in a public forum is pure speech "cognizable

---

[9] This case does not involve any issue of access to an area such as "the White House" that is closed to the general public. ER-9 (quoting *Zemel v. Rusk*, 381 U.S. 1, 17 (1965)).

25

under the First Amendment." ER-6; *see Animal Legal Def. Fund*, 878 F.3d at 1203–04; *Askins*, 899 F.3d at 1044; *Fordyce*, 55 F.3d at 438–39. By prohibiting presence with intent to observe certain events in a traditional public forum, the Ordinance prohibits recording those events, because observation is inextricably intertwined with recording. The district court therefore erred in exempting the Ordinance from First Amendment scrutiny.

In criminalizing mere presence in a traditional public forum with the purpose of observing sideshows, the Ordinance restricts Fermoso's right to record them, because observation is "a necessary prerequisite to recording." *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020); *see also Sanchez v. City of Atherton*, No. 22-cv-03106, 2023 U.S. Dist. LEXIS 3763, at *14 (N.D. Cal. Jan. 9, 2023) ("[G]iven that the Ninth Circuit protects the recording of police engaged in official duties, it follows that the act of observing them, which would necessarily be part of recording them, would also be protected."); *cf. Fields v. City of Philadelphia*, 862 F.3d 353, 356, 358 (3d Cir. 2017) (holding First Amendment was implicated where officer pushed observer "and pinned her against a pillar for one to three minutes, which prevented her from observing or recording the arrest," because "[t]here is no practical difference between allowing police to prevent people from taking recordings and actually banning the possession or distribution of them"). In referring to "video recordings," the Ordinance's legislative history

26

confirms that by restricting presence in a public forum with intent to observe

certain events, the Ordinance restricts the right to record those events. ER-184.

As the Seventh Circuit has confirmed, the "act of *making* an audio or

audiovisual recording is necessarily included within the First Amendment's

guarantee of speech and press rights as a corollary of the right to disseminate the

resulting recording," and "[b]ecause the First Amendment protects conduct and

activities necessary for expression," it covers actions "essential to carry out . . .

protected monitoring and recording" of events in public, such as observing them

from sufficient "visual or physical proximity." *Brown v. Kemp*, 86 F.4th 745, 779

(7th Cir. 2023) (quoting *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012)).

The Ordinance thus infringes the First Amendment right to record events in a

traditional public forum.

The Ordinance also restricts the ability to gather news in a traditional public

forum through firsthand recording of sideshows. Newsgathering must "qualify for

First Amendment protection," because "without some protection for seeking out

the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408

U.S. 665, 681 (1972). Therefore, "newsgathering is an activity protected by the

First Amendment," especially since a "free press is the guardian of the public

interest." *Leigh v. Salazar*, 677 F.3d 892, 897, 900 (9th Cir. 2012) (quoting *United

States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978)); *see also Cal. First

27

*Amend. Coal. v. Calderon*, 150 F.3d 976, 981 (9th Cir. 1998) (noting the "right of the press to gather news and information is protected by the First Amendment").

Accordingly, "scores of Supreme Court and circuit cases apply the First Amendment to safeguard the right to gather information as a predicate to speech. . . . The right to gather information plays a distinctly acute role in journalism. Firsthand accounts, buttressed by video evidence, enhance accuracy and credibility in reporting and increase transparency and reader trust, allowing the press 'to tell more complete and powerful stories.'"[10] *People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 829 (4th Cir. 2023); *see also W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) ("An individual who photographs animals or takes notes about habitat conditions is creating speech in the same manner as an individual who records a police encounter."); *Alvarez*, 679 F.3d at 595–96 (noting that "banning photography or note-taking at a public event would raise serious First Amendment concerns; a law of that sort would obviously affect the right to publish the resulting photograph or disseminate a report derived from the notes.").

The Ordinance is therefore subject to First Amendment scrutiny because it restricts protected speech in a traditional public forum. Although the Ordinance

---

[10] The County itself relies on firsthand images of sideshows to convey information of public concern about these events. ER-107, ER-112.

does not use the word "recording," the criminalization of "knowingly being present for the purpose of observing a sideshow" triggers First Amendment review because it punishes "locational activity" in a public forum that is inextricably intertwined with "speech production" in the form of recording events in that forum. ER-10 (emphasis omitted).

The First Amendment protects both "the process of creating a form of *pure* speech" and "the product of these processes," and the predicate act of observing and thus recording events in a public forum is "inextricably intertwined with the purely expressive product" of the recording itself. *Anderson*, 621 F.3d at 1061–62; *see also Fields*, 862 F.3d at 358 ("The First Amendment protects actual photos, videos, and recordings, and for this protection to have meaning the Amendment must also protect the act of creating that material.") (cleaned up). As a result, the Ordinance is subject to review under the First Amendment as a restriction on the pure speech of recording events in a traditional public forum.

In holding otherwise, the district court created a roadmap for censorship by immunizing restrictions on recording events in a public forum. Under the district court's rationale, the government could get away with prohibiting the recording of any event in a public forum—for example, protests, performances, or police activity—by the subterfuge of omitting the word "recording" while criminalizing presence in the forum with the purpose of observing such events. That result would

29

make a mockery of the First Amendment. *See Jordan v. Adams Cnty. Sheriff's Off.*, 73 F.4th 1162, 1170 (10th Cir. 2023) ("If police could stop criticism or filming by asking onlookers to leave, then this would allow the government to simply proceed upstream and dam the source of speech" and thus "bypass the Constitution.") (cleaned up). Accordingly, the district court erred in exempting the Ordinance from First Amendment scrutiny.

### C. The Ordinance Cannot Be Exempted from First Amendment Scrutiny on the Ground that Persons Merely Recording Unlawful Conduct in a Traditional Public Forum Are Somehow Participants in such Conduct.

The district court's ruling cannot be sustained by falsely equating presence in a public forum while recording events with dangerous conduct such as "reckless driving." ER-10. While a prohibition on the latter might not implicate the First Amendment, a restriction on the former inherently triggers First Amendment scrutiny. *McCullen*, 573 U.S. at 476. Also, the right to observe events in a public forum is protected by the First Amendment as a predicate to recording them. *Brown*, 86 F.4th at 779.

The fact that such events may involve unlawful conduct by some persons cannot justify ignoring the First Amendment rights of other persons. This Court has held that "journalists" and "members of the public" who are observing or reporting on unlawful events in a public forum, such as violence during a protest, "cannot be punished for the violent acts of others," and the "proper response to

30

potential and actual violence is for the government to ensure an adequate police presence, . . . and to arrest those who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 834 (9th Cir. 2020) (cleaned up). The same principle applies here—the government may not prohibit the press and public from recording events in a public forum simply because those events involve unlawful conduct.

The County claims that "spectators are an integral part of sideshows," ER-104, but a government cannot legislate First Amendment rights out of existence merely by asserting that persons recording events in a public forum are participants in them. One "cannot foreclose the exercise of constitutional rights by mere labels." *NAACP v. Button*, 371 U.S. 415, 429 (1963); *cf. Matsumoto*, 2024 U.S. App. LEXIS 30342, at *51 ("Labeling protected speech as criminal speech cannot, by itself, make that speech integral to criminal conduct."). The district court therefore erred in accepting that a "spectator" can be equated to someone who is "participating in sideshows."[11] ER-3.

---

[11] Mere presence at a sideshow does not aid and abet any crimes committed during the sideshow. *See*, *e.g.*, *In re K.M.*, 75 Cal. App. 5th 323, 329 (2022); *People v. Lara*, 9 Cal. App. 5th 296, 322 (2017).

31

In any event, the Ordinance itself distinguishes between spectators and participants by stating that "'spectator' includes" but is not limited to "any person at the location of the sideshow event that may have participated in preparations and/or promoting the sideshow event." ACC § 10.40.020. Under the Ordinance, the term "spectator" is not limited to "participants," because "includes" is a term of enlargement rather than limitation. *See People v. Ng*, 13 Cal. 5th 448, 540 (2022); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 774 (2002).

The press and public cannot lose their First Amendment right of access to a traditional public forum or the right to record events in that forum merely because those events are unlawful. The public has a compelling interest in protecting the ability of journalists and others to record events of public concern even if—and perhaps especially because—they are unlawful. *See Index Newspapers*, 977 F.3d at 831 ("Indeed, the public became aware of the circumstances surrounding George Floyd's death because citizens standing on a sidewalk exercised their First Amendment rights and filmed a police officer kneeling on Floyd's neck until he died."); *cf. United States v. Stevens*, 559 U.S. 460, 469 (2010) (while government may enforce "prohibition of animal cruelty itself . . . *depictions* of animal cruelty" are not excluded "from 'the freedom of speech' codified in the First Amendment"); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116–18 (1991) (invalidating law that imposed financial burden on speech about

32

crime); *Winters v. New York*, 333 U.S. 507, 508, 510 (1948) (holding publications "principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime" were "as much entitled to the protection of free speech as the best of literature").

Reporting on unlawful conduct informs the debate on whether certain conduct should be criminal or how it should be punished, helps the public evaluate the government's enforcement policies and practices, and empowers people to protect themselves. Fermoso's reporting serves these interests. As a road safety reporter, he sees his role as "neutrally informing Oakland communities on the facts and circumstances of sideshows so that they are empowered with the knowledge necessary to understand the history of and problems associated with these events and may make fact-based decisions regarding sideshow attendance, policing, and policy reform." ER-155–56. As Fermoso has reported, the impact of *The Oaklandside*'s reporting "was reflected in the budget priorities Councilmembers published . . . . For the first time in years, all of them prioritized traffic safety by asking for barricades at intersections and sidewalks, hardened medians to stop sideshows, and faster repairs to potholed streets." ER-232.

Such reporting makes essential contributions to "the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). Recording and reporting on crimes committed in public cannot itself be considered a crime:

33

News reporting, we can assume, no matter how explicit it is in its description or depiction of criminal activity, could never serve as a basis for aiding and abetting liability consistent with the First Amendment. It will be self-evident in the context of news reporting, if nowhere else, that neither the intent of the reporter nor the purpose of the report is to facilitate repetition of the crime or other conduct reported upon, but, rather, merely to report on the particular event, and thereby to inform the public.

*Rice v. Paladin Enters.*, 128 F.3d 233, 266 (4th Cir. 1997).

Firsthand recordings from bystanders are also critical to assist law enforcement in prosecuting crimes that occur at sideshows. In reporting on a sideshow in San Jose, NBC Bay Area noted that police asked anyone with videos of "the sideshow to contact them" to help identify suspects. Alyssa Goard, *San Jose Sideshow near Santana Row Injures Spectator, Police Officer*, NBC Bay Area (June 16, 2024), https://www.nbcbayarea.com/news/local/south-bay/santana-row-sideshow/3568247/ (last updated June 17, 2024, 4:47 AM).

Similarly, CBS News Bay Area reported that the San Francisco police chief "urged the public to call 911 if they ever witness a side show, while also asking witnesses to share videos with police to assist in investigations." Kevin Ko, *San Francisco Police Chief Promises Accountability, but so far No Arrests in Sunday Sideshows*, CBS News Bay Area (June 11, 2024, 5:59 PM), https://www.cbsnews.com/sanfrancisco/news/san-francisco-police-chief-promises-accountability-but-no-arrests-so-far-in-weekend-sideshows/.

Ironically, however, the Ordinance makes it a crime for bystanders to assist law enforcement in this way, which implicates the right to petition the government. *See Entler v. Gregoire*, 872 F.3d 1031, 1044 (9th Cir. 2017) (holding "right to petition for the redress of grievances" includes "criminal complaints"). By sending law enforcement a video of a sideshow recorded within 200 feet of the sideshow that would show sufficient detail to identify participants in unlawful conduct, one would effectively be confessing to a violation of the Ordinance, because the video could not have been made without being present for the purpose of observing the sideshow. The district court's ruling thus undermines the very interest in preventing sideshows that the Ordinance supposedly protects.

## II. THE ORDINANCE IS A CONTENT-BASED RESTRICTION ON THE RIGHT TO RECORD EVENTS OF PUBLIC CONCERN IN A TRADITIONAL PUBLIC FORUM.

The district court erred as a matter of law in holding the Ordinance is content neutral. As applied to this case, it is a content-based restriction on the right to record sideshows in person.

Under the First Amendment, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content," and any such restriction is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95

35

(1972)). That principle "applies with full force in a traditional public forum." *McCullen*, 573 U.S. at 477 (citing *Mosley*, 408 U.S. at 95).

A law is content based if it "defin[es] regulated speech by particular subject matter" or "its function and purpose." *Reed*, 576 U.S. at 163. Such a law remains content based regardless of any "innocuous justification" or "benign motive" the government might have for enacting it. *Id.* at 165–66. Even if a content-based law "might seem entirely reasonable," a "clear and firm rule" against such laws "is an essential means of protecting freedom of speech." *Id.* at 171 (cleaned up).

By making it unlawful to be present in a traditional public forum for the purpose of observing a sideshow, the Ordinance restricts the right to record the sideshow, because presence with intent to observe an event is inextricably intertwined with recording it. *Chestnut*, 947 F.3d at 1090; *Sanchez*, 2023 U.S. Dist. LEXIS 3763, at *14. By covering only the sideshow, the Ordinance prohibits recording the sideshow but not other events at the same time and place.

Accordingly, the Ordinance is content based and unconstitutional as applied to this case because it "prohibits the recording of a defined topic" at a given time and place in a public forum. *Animal Legal Def. Fund*, 878 F.3d at 1204. It does not prohibit recording other topics at the same time and place, such as protests or police activity. ACC § 10.40.20. For example, if one were present at an intersection to record a protest or traffic stop and a sideshow then occurred at the

36

same time and place, one would violate the Ordinance by recording the sideshow but not the protest or traffic stop.

Therefore, the Ordinance is "an 'obvious' example of a content-based regulation of speech" because it "defin[es] regulated speech by particular subject matter." *Animal Legal Def. Fund*, 878 F.3d at 1204 (alteration in original) (quoting *Reed*, 576 U.S. at 163); *cf. Stevens*, 559 U.S. at 468 (holding statute was content based when it prohibited "visual [and] auditory depiction[s] . . . depending on whether they depict conduct in which a living animal is intentionally harmed") (alterations in original). By criminalizing the recording of sideshows but not other events at the same time and place, the Ordinance imposes a powerful "disincentive only on speech of a particular content." *Simon & Schuster*, 502 U.S. at 116.

Although the Ordinance applies only in certain locations, it is not purely "location-based" or "agnostic as to content." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022). Instead, it is content based because it singles out "specific subject matter for differential treatment" by restricting the recording of sideshows but not other events or topics at the same time and place. *Id.* (quoting *Reed*, 576 U.S. at 169).

A law that targets speech based on subject matter remains content based notwithstanding that it has a limited geographic scope. *Carey v. Brown*, 447 U.S. 455, 460–61 (1980) (holding that statute prohibiting picketing near homes except

37

for labor disputes was "based upon the content of the demonstrator's communication"); *Mosley*, 408 U.S. at 95 (holding that ordinance restricting picketing near schools except for labor disputes was content based because it "describes permissible picketing in terms of its subject matter"). Therefore, the Ordinance is a content-based restriction on firsthand recordings of sideshows.

The district court erred in holding the Ordinance "closely resembles the content-neutral regulation in *McCullen*." ER-12. In *McCullen*, the law at issue prohibited being present within the specified buffer zone without regard to purpose, intent, or subject matter. 573 U.S. at 471–72. The Court deemed the law content neutral because one could violate it by simply being present in the buffer zone, regardless of whether one was speaking or intending to speak on any subject. *Id.* at 479–80. Here, by contrast, the Ordinance only applies to one who is present "for the purpose of viewing, observing, watching, or witnessing the sideshow event as it progresses." ACC § 10.40.020. In doing so, it restricts the right to record sideshows but not other events or topics at the same time and place. That is the essence of a content-based restriction.

The district court also erred in deeming the Ordinance content neutral because it does not apply to forms of speech other than recording, such as "speaking or carrying signs addressing any topic or conveying any message." ER-12. Although the Ordinance may not implicate other forms of speech, it still

38

criminalizes recording a sideshow but not other events at the same time and place. Therefore, it remains a content-based restriction on the right to record events in a traditional public forum.

A law is no less content based because it restricts one form of speech but not others. For example, the Supreme Court held that a restriction on picketing was content based because it "describes permissible picketing in terms of its subject matter," although it did not restrict other forms of speech at the same time and place. *Mosley*, 408 U.S. at 95. Similarly, the Court held that a law was content based when it prohibited "signs tending to bring a foreign government into public odium or public disrepute, such as signs critical of a foreign government or its policies," although the law "applies only to the display of signs, not to the spoken word." *Boos v. Barry*, 485 U.S. 312, 316 (1988).

More recently, the Court held a sign ordinance was content based because its restrictions "depend entirely on the communicative content of the sign," although the ordinance did not restrict other forms of speech at the same time and place. *Reed*, 576 U.S. at 164. And this Court has noted that a law is content based if it "forbids those addressing abortion issues, but not those protesting war, from giving speeches in a park, but allows abortion protestors and supporters to pass out leaflets about abortion." *Berger*, 569 F.3d at 1051. Such a law remains content based "even though *some* manner of communication on the subject is allowed." *Id.*

39

Therefore, a law is content based if it restricts one form of speech based on content, regardless of whether it applies to other forms of speech. To hold otherwise would gut the rule against content-based restrictions, because the government could always claim that a restriction is content neutral because it does not apply to all forms of speech. The district court's holding was therefore wrong as a matter of law.

The Ordinance remains unconstitutional as applied to Fermoso's intended speech regardless of whether it could be validly applied in other circumstances. Assuming a law is a "generally applicable regulation of conduct" in some circumstances, it is a content-based restriction of speech as applied to specific individuals if its enforcement against them "depends on what they say." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 27–28 (2010). That is the case here. If Fermoso is making a recording within 200 feet of a sideshow, the Ordinance applies to him depending on what he is recording. If he is recording the sideshow, he is in violation of the Ordinance, because he has the purpose of observing the sideshow. If he is recording another event, he is not in violation of the Ordinance, because he does not have the purpose of observing the sideshow. Therefore, application of the Ordinance to Fermoso "pivots on the content of the recording." *Animal Legal Def. Fund*, 878 F.3d at 1204.

40

In these circumstances, enforcement of the Ordinance against Fermoso would be content based because it would depend on the content of his speech. *See Humanitarian L. Project*, 561 U.S. at 28 (reviewing law as content based because although it "may be described as directed at conduct" in other circumstances, "as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message"); *Cohen v. California*, 403 U.S. 15, 18 (1971) (reversing conviction for disturbing the peace where statute was applied to defendant based on "content of the message" he expressed with jacket he wore); *Ness v. City of Bloomington*, 11 F.4th 914, 923–24 (8th Cir. 2021) ("To determine whether Ness's photography or recording in a park is proscribed by the ordinance, an official must examine the content of the photograph or video recording to determine whether a child's image is captured. Thus, the ordinance is content-based as applied to the facts of this case.").

## III. THE ORDINANCE CANNOT SURVIVE STRICT SCRUTINY BECAUSE IT IS NOT THE LEAST RESTRICTIVE MEANS TO SERVE ANY PROPER INTERESTS.

The Ordinance does not survive strict scrutiny because it is not the least restrictive means to serve any proper interests asserted by the County. "Content-based restrictions on speech are subject to strict scrutiny and may only be upheld if they are the least restrictive means available to further a compelling government interest." *Askins*, 899 F.3d at 1044 (cleaned up).

41

"The least-restrictive-means standard is exceptionally demanding." *Meinecke*, 99 F.4th at 525 (quoting *Holt v. Hobbs*, 574 U.S. 352, 364 (2015)). "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 813 (2000) (cleaned up). "Even if a state intends to advance a compelling government interest, we will not permit speech-restrictive measures when the state may remedy the problem by implementing or enforcing laws that do not infringe on speech." *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020) (cleaned up).

### A. The District Court Erred in Upholding the Ordinance Based on an Impermissible Interest in Deterring Protected Speech.

The Ordinance cannot be justified on the ground that "Alameda County has no alternative means of deterring spectating." ER-13. To restrict "spectating," *i.e.*, presence in a public forum with the intent of observing a sideshow, is to restrict the protected speech of recording that event, because observation of events is inextricably intertwined with recording them.

As the Supreme Court has held, the government may not posit the effect of suppressing speech as an interest justifying a law, because "this sort of circular defense can sidestep judicial review of almost any statute" and "[e]very content-based discrimination could be upheld by simply observing that the state is anxious to regulate the designated category of speech." *Simon & Schuster*, 502 U.S. at 120. To hold otherwise would eviscerate the First Amendment. The desire to suppress

42

protected speech can never be a valid interest for regulating it. *Lind v. Grimmer*, 30 F.3d 1115, 1119 (9th Cir. 1994) ("[I]t is not the function of government to promote speech it deems more valuable and to suppress speech it deems less valuable.").

The Ordinance's legislative history asserts "video recordings" of sideshows posted on social media can "potentially perpetuate the activity and increase its popularity." ER-184. Even if restricting speech about sideshows could be considered as a means of preventing them, the Ordinance fails strict scrutiny because it is "seriously overinclusive" with respect to that interest. *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 805 (2011). It prohibits recordings that have nothing to do with allegedly encouraging sideshows, such as recordings for the purpose of covering them neutrally or critically in the media, protesting them, reporting them to law enforcement, or otherwise petitioning the government. Accordingly, the Ordinance cannot be justified by any interest in deterring speech about sideshows.

**B.    The County Has a Less Restrictive Alternative Because It Can Enforce Laws Against Unlawful Conduct Instead of Punishing Protected Speech.**

The Ordinance cannot be justified by the interest in preventing sideshows themselves. While the County may have a compelling interest in preventing sideshows and related hazards, it can deter them by enforcing the numerous existing laws against unlawful conduct associated with sideshows, rather than punishing reporters or others for exercising their First Amendment right to record

43

them. Therefore, the County has a less restrictive alternative to limiting the recording of sideshows, and the Ordinance fails strict scrutiny. *See IMDb.com*, 962 F.3d at 1126 (holding that where state had "various other laws at its disposal that would allow it to achieve its stated interests while burdening little or no speech," content-based restriction on speech was not "the least restrictive means to protect its compelling interest") (quoting *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 949 (9th Cir. 2011)); *Animal Legal Def. Fund*, 878 F.3d at 1204–05 (holding content-based law that prohibited "recording of a defined topic" failed strict scrutiny where "owners can vindicate their rights" through enforcing other laws).

In addition, the County may adopt a law that targets sideshows without punishing protected speech, as nearby jurisdictions have done. Oakland has an ordinance that prohibits organizing or facilitating sideshows without making it unlawful merely to record them. *See* Oakland, Cal., Code §§ 10.74.010–10.74.090 (2023). San Francisco recently adopted a similar ordinance that prohibits aiding and abetting or participating in a sideshow but protects members of the press and public who are simply documenting or recording it. S.F., Cal., Police Code § 5606 (exempting "members of the media engaged in the course and scope of their duties" and "members of the public who are merely observing and/or reporting" on sideshow or preparations).

The County has readily available alternatives to address unlawful conduct associated with sideshows, because "the penal laws" can be "used to punish such conduct directly" rather than punishing reporters or others for engaging in protected speech. *Comite de Jornaleros*, 657 F.3d at 950 (quoting *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980)). Because the County has "several less speech-restrictive alternatives to achieve public safety," the Ordinance violates the First Amendment. *Meinecke*, 99 F.4th at 525.

Experience shows that such alternatives can be effective. For example, San Diego police recently prevented "a coordinated event at multiple intersections," arresting the alleged coordinator "on suspicion of conspiracy to commit felony vandalism, exhibition of speed, reckless driving, facilitating an exhibition of speed and obstructing arrest." Caleb Lunetta, *Street Takeover Events Involving 200 People Thwarted Throughout San Diego Last Weekend*, San Diego Union-Tribune (June 5, 2024, 8:08 PM), https://www.sandiegouniontribune.com/news/public-safety/story/2024-06-05/street-takeover-events-san-diego (last updated June 6, 2024, 12:23 AM).

Earlier this year, officers "seized 13 vehicles and arrested two people on suspicion of participating in illegal street takeover 'sideshow' events"; the arrests were on charges of "felony vandalism, reckless driving and speeding." Karen Kucher, *Officers Seize 13 Vehicles, Arrest 2 in Connection with Street Takeover*

45

*'Sideshows' in San Diego*, San Diego Union-Tribune (May 2, 2024, 8:30 PM),

https://www.sandiegouniontribune.com/news/public-safety/story/2024-05-

02/officers-seize-vehicles-street-takeover-sideshows (last updated May 3, 12:30

AM). Around Labor Day in 2022, "officers arrested 11 people and cited 51

involved with the events," and recently, "officers were able to prevent a group

from putting on two sideshows after catching word the events were being

planned." *Id.*; *see also* David Hernandez, *11 Arrested, 51 Cited During Street

Takeovers in San Diego, Spring Valley*, San Diego Union-Tribune (Sept. 6, 2022,

8:45 PM), https://www.sandiegouniontribune.com/news/public-safety/story/2022-

09-06/11-arrested-52-cited-during-street-takeovers-in-san-diego-spring-valley (last

updated Sept. 7, 12:45 AM).[12]

        As these examples show, the proper response to unlawful conduct in a public

forum is to enforce valid laws against those "who actually engage in such conduct,

rather than to suppress legitimate First Amendment conduct as a prophylactic

measure." *Index Newspapers*, 977 F.3d at 834 (cleaned up); *see also IMDb.com*,

962 F.3d at 1123 ("Rather than restrict truthful speech, the typical 'method of

---

[12] In addition to enforcing otherwise valid laws, some jurisdictions may have "spectating" laws similar to the Ordinance, but the existence of similar laws does not validate the Ordinance. *See Aptive Env't, LLC v. Town of Castle Rock*, 959 F.3d 961, 995 (10th Cir. 2020) (holding "fact that other cities have similar ordinances cannot, standing alone" justify ordinance that violates First Amendment).

46

deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it.'") (quoting *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001)).

If sideshows and related hazards have continued despite the abundance of laws prohibiting them, it is not for lack of tools available to the County. If "jurisdictions have struggled to address sideshows" with existing laws, as the County asserts, ER-103, that is a matter of priorities and resource allocation. The government's decisions on priorities and resource allocation to enforce laws against unlawful conduct cannot excuse a restriction on protected speech. *Anderson*, 621 F.3d at 1065 (holding that alleged lack of resources to enforce "public health" rules could not justify ban on protected speech of tattooing where "the provision *vel non* of such resources is a matter within the City's control").

Perhaps it might be easier to enforce a 200-foot perimeter against anyone recording a sideshow than to arrest and prosecute individuals who are driving unlawfully or committing other crimes, but the First Amendment does not permit laws restricting speech simply because they are easier to enforce. *McCullen*, 573 U.S. at 495 (striking down buffer zone and noting that "[a] painted line on the sidewalk is easy to enforce, but the prime objective of the First Amendment is not efficiency"). Therefore, "it does not matter" whether the Ordinance might "accomplish what it sets out to do," because an "unconstitutional statute that could

achieve positive societal results is nonetheless unconstitutional." *IMDb.com*, 962 F.3d at 1128.

### C. The Ordinance Is Not Justified by Any Permissible Safety Interest Because It Fails to Protect Other Bystanders from Risks of Harm Similar to Those Faced by "Spectators."

Although the County asserted "[s]pectators at sideshows risk injury or death," ER-102, it cannot plausibly argue that the Ordinance is justified by any interest in protecting safety. Any such argument is undermined by the fact that the Ordinance applies only to persons present for the purpose of observing the sideshow, not persons present for other purposes, although the risk of harm is similar for both. A "law cannot be regarded as protecting an interest of the highest order" when "it leaves appreciable damage to that supposedly vital interest unprohibited."[13] *Republican Party v. White*, 536 U.S. 765, 780 (2002) (cleaned up); *see also Reed*, 576 U.S. at 172 (same) (quoting *White*, 536 U.S. at 780).

A content-based law aimed at protecting safety "is underinclusive and, consequently, not narrowly tailored" when it fails to prevent risks of harm that are "equally dangerous" as those prohibited. *Rodgers v. Bryant*, 942 F.3d 451, 457 (8th Cir. 2019) (affirming preliminary injunction against content-based law restricting "charitable solicitation" that was not "narrowly tailored to achieve

---

[13] Also, bystander safety cannot justify the prohibition on presence near mere "preparations," which can be as minimal as the gathering of one or more vehicles or persons. ACC § 10.40.020.

48

[state's] public and motor-vehicle safety interest" where it failed to prevent "political or commercial" solicitation that presented similar risks of "traffic hazard or impediment"); *cf. Reed*, 576 U.S. at 172 (holding content-based sign code was not "narrowly tailored to further a compelling government interest" where town "offered no reason to believe that directional signs pose a greater threat to safety than do ideological or political signs").

The County admitted that "[s]pectators and others" are at similar "risk of injury or death" at sideshows, and that persons other than "spectators," such as "passersby and local residents or workers, may be at risk of injury from sideshows," but it contended "they do not present the same risks of increased unlawful behavior associated with spectators." ER-102, ER-104; *see also* ER-112 (image of person holding sign who if not a "spectator" is at similar risk as "spectator"). In doing so, the County effectively conceded that its ultimate interest is not in protecting the safety of all but in preventing the unlawful behavior of some. That interest does not justify a content-based restriction of the First Amendment rights of the press and public to record events in a public forum, even if the events involve unlawful conduct by others. *Index Newspapers*, 977 F.3d at 834. As noted above, the County can serve its interest in preventing unlawful conduct by enforcing existing or potential laws without criminalizing the recording

49

of sideshows. Accordingly, the Ordinance violates the First Amendment as a content-based restriction on protected speech in a traditional public forum.

## CONCLUSION

For the foregoing reasons, the district court's order denying a preliminary injunction should be reversed, and the case should be remanded with directions to enter a preliminary injunction prohibiting enforcement of the Ordinance against Fermoso's firsthand recording of sideshows.

Dated: December 20, 2024

Respectfully submitted,

FIRST AMENDMENT COALITION

By _____*/s/ David Loy*_____
            DAVID LOY
            ANN CAPETTA
            Attorneys for Plaintiff and Appellant
            JOSE ANTONIO GARCIA

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated                    .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**                                                      **Date**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                      *Rev. 12/01/22*